## Isett *versus* Caldwell.

1. Where a note provides that interest thereon shall be payable "in gold or its equivalent," and said interest is paid in legal tender notes, at a rate deemed by the parties equivalent to gold, the excess so paid above six per cent. is not to be regarded as usurious.   When suit is brought on the note, the maker cannot therefore recoup the excess of the interest thus paid from the principal.

2. Where a court, by mistake, intending to enter judgment for the lesser of two sums, enters judgment for both, the Supreme Court will correct the mistake by reversing the judgment, and entering judgment in the proper amount.

May 23d 1882.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Huntingdon county :* Of January Term of 1882, No. 291.

Debt, by John H. Isett against Israel C. Caldwell, upon the following promissory note :

"$11,000.                                   February 1st 1869.

"On demand, we, or either of us, promise to pay John H. Isett, or order, the sum of $11,000, with interest at the rate of 6 per cent. per annum.   Said interest to be paid in gold or its equivalent.                                "I. C. CALDWELL,

                                        "D. CALDWELL."

On the note were endorsed certain payments of interest. On the trial, before JUNKIN, P. J., it appeared that said interest was never paid in gold, but in National currency or legal tender notes, to an amount treated by the parties as equivalent in value to gold—gold being at a premium during the period in question.   The defendant sought to set off in this suit the excess paid above 6 per cent. in legal tender currency.   It further appeared that the note in suit was a renewal note, the original note in the transaction having been given in 1865, for $10,000, and there was some controversy both as to the true amount of the principal of the debt, and also whether the original note included interest for the year following its date.   The weight of the evidence indicated that the principal debt in 1865 was either $9,000 or $8,970, and that one year's interest at 10 per cent. was added thereto, and the note given for $10,000.

The court instructed the jury, inter alia, as follows :

"The question is, whether, under the special agreement to pay the interest in gold, the excess above six per cent. to make the currency equal to gold, must be recouped against the principal.   [We are of opinion that although by the very terms of this note the defendant was to pay the interest in gold, or in

[Isett v. Caldwell.]

currency which would be equal to gold, still the effect is to give the plaintiff more than six per cent. per annum, and is thus in substance an agreement to pay more than statutory interest, which the statute declares shall not be enforced.] Had the defendant paid in gold as interest, although it might be worth ten or fifty per cent. premium, this would have been legal, and the premiums could not have been recouped against the principal debt, for the reason that gold coin, at whatever premium, is just what it purports to be, so much money, and is never worth more than one hundred cents to the dollar, and remains at that, while currency falls below one hundred cents in the dollar. But [the National currency is made a legal tender, and one dollar of this will pay as much debt as the gold dollar, and the creditor must accept it; and when he receives it in payment of interest, and takes more than six per cent., he has taken more than the law allows, no matter under what form it is received, nor what it is made equal to.] The statute declares, that contracts for the payment of more than six per cent. shall not be enforced; and further, that if paid in fact, the debtor may insist upon applying the excess to the principal itself. No device by which more is received can be tolerated: Rheem v. Bosler, 22 Smith 54. The spirit of the statute of 1858 is, that the borrower cannot be compelled to pay more than six per cent. for the loan or use of money; and were any device whatever sustained by which he may be coerced into paying money under another form or name than interest, the law will soon become a dead letter.

"Contracts for gold of a certain degree of fineness, or for Spanish dollars, are not forbidden, and may be enforced, while all agreements to pay more than six per centum for the use of money are void, because the law withholds its aid, and refuses to enforce them. [It is therefore your duty to find what interest has been received by the plaintiff from the defendant on the note in suit, and on all prior notes given and taken up by new notes for the same debt, until you reach the final note in suit, and whatever you find has been received over and above six per cent. for interest, you must apply the excess to the discharge of the time it was paid, and find the true balance remaining unpaid as your verdict.

"We also request that you find specially certain facts and amounts, by which our error, if we have committed an error, in confining you to simple interest, may be corrected by a higher court, without another trial.

" . . . . . Mr. Caldwell said their estimate made it (the original note) $9,000, but that he discovered an error in allowing too much interest on a draft of some kind to the amount of $30, and that the true amount of that note was $8,970, [so

that you must begin with simple interest on the note of 1865, upon $9,000 at the outside, or else upon $8,970, and then make your calculation straight down from there until you come to this date,] because there is no evidence that any more money entered into the note in suit after that time, 1865. If you should reach the conclusion under the evidence, that that settlement was fair and no mistake made, so that there is nothing to correct, then you start with $9,000 in 1865, and count interest down to this date, allowing the payments made in excess of the legal interest, six per cent., to be applied or set off against the principal itself."

The jury found a general verdict for the plaintiff for $951.41, and they also found specially that on the basis of allowing interest in gold or its equivalent the sum due to the plaintiff would be $1,595.37.

On the hearing of a motion for a new trial, it appeared that there were certain clerical errors in the calculation of the above mentioned sums, and the court overruled the motion for a new trial, provided the defendant would agree, by writing filed, to correct said errors, thereby increasing the amount of the general verdict to $1,185.59 and the amount of the special finding to $2,095.37 with the same effect as if so found by the jury. The defendant filed an agreement to that effect April 5, 1880.

Judgment was subsequently entered generally on the verdict as amended, the entry on the appearance or continuance docket showing no amount. It appeared that the judgment docket contained an entry under the date of February 18th 1880, of a "verdict for the plaintiff for $951.45;" also, under date of January 6th 1882, entry of "judgment for the plaintiff for $2,095.87."

The plaintiff took this writ of error, assigning for error the portions of the charge above quoted within brackets, and also that "the verdict being bad as a special verdict, the court erred in entering judgment thereon."

*W. P. & R. A. Orbison* and *S. S. Blair*, for the plaintiff in error.—The payment of interest, according to the terms of the note, in the equivalent of gold, although made in legal tender currency, was not usurious, and the excess paid over 6 per cent. in currency cannot be recouped : Price Church *v.* Fuchsel, 4 P. F. S. 71 ; Mather *v.* Kinike, 1 P. F. S. 425 ; Dutton *v.* Palairet, 2 P. F. S. 109 ; Baker's App., 9 P. F. S. 313 ; Bronson *v.* Rodes, 7 Wallace 229 ; Trebilcock *v.* Wilson, 12 Wallace 687 ; The Vaughan and Telegraph, 14 Wallace 258 ; Patten *v.* Thompson, 1 Root (Conn.) 526 ; Hobart *v.* Norton, 2 Ibid. 46.

The court erred in virtually taking from the jury the question of the amount of the original note of 1865, the evidence on that point being conflicting.

*Speer* and *McMurtrie*, for the defendant in error.—No interest was ever demanded or paid in gold. The contract was not for the payment of interest in gold as a commodity, as in gold coin or ingots of a certain degree of fineness, but simply in gold. This meant in lawful money, gold dollars or United States legal tender dollars, at 6 per cent. The plaintiff not having demanded gold, but having received payments in lawful money beyond the legal rate of interest, the excess above the legal rate should be applied to the reduction of the principal debt, which was payable in currency. No contract can be framed so as to secure more than the legal rate of interest: Fitzsimons *v.* Baum, 8 Wr. 32; Heath *v.* Page, 13 P. F. S. 120; Bosler *v.* Rheem, 22 P. F. S. 54.

Baker's Appeal, 9 P. F. S. 313, relied upon by the other side, was the bequest of a legacy to be payable in gold or its equivalent. The testator was making a gift, and in construing his will the court held that he meant the commercial value of gold in the market. No question of contract or of public policy or of usury arose, and the case is inapplicable.

Mr. Justice Paxson delivered the opinion of the court, October 2d 1882.

The interest upon the note in controversy was payable "in gold or its equivalent." In point of fact it was not paid in gold, but in legal tender notes at a rate the parties deemed the equivalent of gold.

The learned judge instructed the jury that as the effect of this was to give the plaintiff more than six per cent. interest, the contract was usurious, and permitted him upon the trial below to recoup the excess of interest thus paid from the principal. At the same time he conceded that if the interest had been paid in gold, it would have been legal, and the premiums thereon could not have been recouped against the principal debt.

It has been settled by a number of cases that a contract payable in gold or silver coin must be paid in such coin or its equivalent in notes: Dutton *v.* Palairet, 2 P. F. S. 109; Bronson *v.* Rodes, 7 Wallace 229; Trebilcock *v.* Wilson, 12 Id. 687; The Vaughan and Telegraph, 14 Id. 258. Were the law otherwise, neither the government, the banks, nor the people, could procure coin for their respective needs if it were selling at a premium. For of what avail would be a contract to deliver a certain amount of coin upon a given day, if the delivery of a corresponding amount of legal tender notes would meet the requirement of such contract?

Does the fact that the interest was paid, not in gold, but in its equivalent in notes, affect the case? We think not. That

was the precise alternative of the contract. It was to be paid in "gold or its equivalent." If the contract was not usurious, which is conceded, surely the fulfillment of the contract according to its terms cannot be usurious. There is no substantial difference between paying in gold, and paying the value of the gold in notes. Commercially the one is the exact equivalent of the other. That the payments upon some occasions were a little more or a little less than the rates of gold on the precise days makes no difference. There were times when the price of gold varied almost daily. Nothing was then more common than for parties paying and receiving gold to agree upon the rate, always of course approximating the market value. Where done in good faith, I never heard the taint of usury applied to such a transaction.

The record discloses some confusion in regard to the judgment. The jury found a verdict for the plaintiff in the sum of $951.41, with a special finding that, allowing him interest in gold, the amount would be $1,595.37. These amounts the court subsequently corrected, with the consent of the defendant, making them respectively $1,185.59 and $2,095.37. The court evidently intended to enter a judgment for the smaller sum, but by some mistake a judgment appears to have been entered for each amount. We can best correct this by reversing the judgment below and entering the proper judgment here.

The judgment is reversed, and judgment is now entered in favor of plaintiff, and against the defendant, for the sum of $2,095.37, with interest from February 18th 1880.